UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERSELL COLSTON,

    Plaintiff,

v.                                                      Case No:   8:17-cv-1089-T-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff, Tersell Colston, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff filed an application for SSI on December 9, 2013, alleging a disability onset date of March 1, 2013. (Tr. 139-44). Plaintiff's claim was denied at the initial and reconsideration levels. Plaintiff requested a hearing and, on March 8, 2016, an administrative hearing was held before Administrative Law Judge Charles J. Arnold ("the ALJ"). (Tr. 26-43). On April 1, 2016, the ALJ entered a decision finding that Plaintiff was not under a disability from December 9, 2013, through the date of the decision. (Tr. 14-21). Plaintiff filed a request for review which the Appeals Council denied on March 17, 2017. (Tr. 1-7). Plaintiff initiated this action by filing a Complaint (Doc. 1) on May 9, 2017.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 9, 2013, the application date. (Tr. 16). At step two, the ALJ found that Plaintiff had the following severe impairments: learning disorder, mood disorders, and schizophrenic, paranoid and other functional psychotic disorders. (Tr. 16). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is restricted to performing low-stress work with no high production demands. In addition, the claimant is limited to the performance of simple, routine, repetitive tasks with simple instructions and to the performance of unskilled work. Finally, the claimant is precluded from contact with the public and limited to only minimal contact with others at the worksite.

(Tr. 18). At step four, the ALJ found that Plaintiff is not capable of performing his past relevant work warehouse worker and security guard. (Tr. 19).

At step five, the ALJ found that considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in the national economy in significant numbers that Plaintiff can perform. (Tr. 20). Relying on the testimony of the vocational expert, the ALJ found that Plaintiff could perform such jobs unskilled table worker, unskilled cleaner, and light, unskilled bagger. (Tr. 20). The ALJ concluded that Plaintiff had not been under a disability since December 9, 2013, the application date. (Tr. 21).

## II.     Analysis

Plaintiff argues that the ALJ erred by failing to evaluate Plaintiff's mental limitations under the correct subsection of the listing of impairments. (Doc. 22 p. 5). Plaintiff contends that the ALJ should have analyzed Plaintiff's impairments under former Listing 12.03 *Schizophrenic, Paranoid and Other Psychotic Disorders*, instead of Listing 12.04 *Affective Disorders*. (Doc. 22 p. 6). Specifically, Plaintiff notes that Listing 12.03 included a subsection that presumed disability if the claimant experienced episodes of extended decompensation or repeated episodes of decompensation. (Doc. 22 p. 6). Further, Plaintiff argues that the ALJ did not account for fluctuations in Plaintiff's symptoms. (Doc. 22 p. 5).

In response, Defendant argues that the ALJ properly evaluated Plaintiff's mental disorders under the Listing of Impairments. (Doc. 23 p. 4). Defendant notes that the paragraph B criteria used in evaluating mental disorders were the same for Listing 12.03 and 12.04. (Doc. 23 p. 4). Defendant argues that the ALJ's RFC accounted for the limitations from Plaintiff's mental impairments and did not fail to account for fluctuations in Plaintiff's symptoms. (Doc. 23 p. 6).

In his decision, the ALJ considered whether Plaintiff met Listing 12.04 *Affective Disorders*. (Tr. 16-18). Despite finding that Plaintiff had the severe impairment of schizophrenic, paranoid and other functional psychotic disorders, the ALJ did not directly address whether Plaintiff met Listing 12.03 *Schizophrenic, Paranoid and Other Psychotic Disorders*. While the ALJ should have addressed whether Plaintiff met Listing 12.03, the ALJ's failure to do so does not warrant remand.

Listing 12.03 and 12.04 are closely related. As Defendant notes, the paragraph B criteria for each listing are identical. *Compare* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.03 (2016) with 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.04 (2016). In addition, the paragraph C criteria for both listing require:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Compare* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.03 (2016) with 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.04 (2016).

In his decision, the ALJ assessed the paragraph B criteria, finding that Plaintiff had moderate restrictions in activities of daily living and social functioning; mild difficulties in concentration, persistence, or pace; and, notably, determined that the record did not show that Plaintiff's mental impairments caused "repeated" episodes of decompensation, each of extended duration. (Tr. 17). *See* 20 C.F.R. § 416.920a(c)(3), (e)(4). Thus, the ALJ properly evaluated Plaintiff's functional limitations in the four broad functional areas. In addition, the ALJ noted that the evidence failed to establish the presence of the paragraph C criteria. Based on his evaluation of the evidence and Plaintiff's limitation in the four broad functional areas, the ALJ concluded Plaintiff had severe mental impairments, but he did not have an impairment or combination of impairments that met or equaled a listed impairment. (Tr. 16-18). *See* 20 C.F.R. § 416.920a(d)(1), (d)(2).

There is no principle of administrative law or common sense that requires remand in quest of a perfect opinion and remand is not essential if it will amount to nothing more than an empty exercise. *Stanton v. Astrue*, 617 F.Supp.2d 1205, 1222 (M.D. Fla. 2008) (citing *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir.1989) and *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000)). Here, remanding the case for the ALJ to consider whether Plaintiff specifically met Listing 12.03 would be an empty exercise.

Further, the Court rejects Plaintiff's argument that remand is necessary because the ALJ failed to account for fluctuations in Plaintiff's symptoms. In his decision, the ALJ evaluated the medical evidence and explained his reasoning in determining Plaintiff's RFC. The ALJ found, in relevant part, that Plaintiff was limited to low-stress work with no high production demands, unskilled simple, routine, repetitive tasks with simple instructions, and no interaction with the public and minimal contact with others. (Tr. 18). While Plaintiff notes in his memorandum that

state agency reviewing psychologist David Tessler, Psy.D., determined that Plaintiff was moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors, the ALJ accommodated this opinion by limiting Plaintiff to tasks with simple instructions and minimal contact with others. (Tr. 18, 66).

Plaintiff also cites treatment records from Gracepoint, but the ALJ evaluated the Gracepoint records, as well as the psychological consultative examination with Lawrence Pasman, Ph.D., and the other relevant evidence of record; and concluded that they showed Plaintiff could perform the RFC he formulated. (Tr. 16-19). The ALJ noted that the medical record evidence was limited. (Tr. 17). It showed that Plaintiff presented with an appropriate appearance with adequate grooming when he participated in the consultative mental status examination with Dr. Pasman in July 2012. (Tr. 17). Although Plaintiff spoke with a significant stutter and exhibited diminished short-term memory functioning, he was fully oriented in all relevant psychological spheres and his short-term memory improved with prompting. Moreover, his remote memory was within normal limits. Although Plaintiff's concentration was below average and he was unable to perform mathematical computations, he was able to count backward from twenty and to recite the alphabet. In addition, no significant cognitive disturbances such as aphasia, apraxia, or agnosia were noted and Plaintiff's motor behavior appeared normal with no evidence of hyperactivity. Finally, Plaintiff exhibited no difficulty establishing and maintaining emotional rapport. Consistent with his observations of Plaintiff at that time, Dr. Pasman diagnosed Plaintiff with stuttering and anxiety disorder, not otherwise specified. (Tr. 17, 214-217).

The ALJ noted that Plaintiff appeared to have developed auditory hallucinations along with significantly reduced remote memory functioning when he participated in a second mental status evaluation with Dr. Pasman a year later, in July 2013. Dr. Pasman noted that Plaintiff had been

arrested for possessing marijuana in the past, and he was unable to rule out substance use as a reason for Plaintiff's increased symptoms. In addition, the record shows that Dr. Pasman also provisionally diagnosed Plaintiff with psychotic disorder, not otherwise specified and rule-out borderline intellectual functioning at the conclusion of his evaluation. Although Dr. Pasman did not perform a function-by-function analysis of Plaintiff's ability to perform work-related activities, he did vaguely acknowledge that Plaintiff has deficits in social functioning, concentration, memory, and adaptive functioning. (Tr. 17, 241-245).

The ALJ noted that treatment records provided by Gracepoint indicate that Plaintiff had become violent and was suspected of having suicidal ideation after he ceased taking his medications and became depressed after being refused an opportunity for employment in the first quarter of 2013. (Tr. 19). Although Plaintiff's global functioning was assessed at 50 when he was voluntarily admitted to Gracepoint, his mood improved and he requested a discharge in stable condition after being offered a job. (Tr. 19, 220-239). The record showed that his mental status continued to improve and that his auditory hallucinations subsided after he began regular treatment and management of appropriately prescribed psychotropic medications at Gracepoint. (Tr. 19, 274-283, 286- 304). More specifically, the record showed that Plaintiff's global functioning was assessed as 59 in May 2014. (Tr. 19, 283). Consistent with his presentation during the hearing, the most recent Gracepoint records indicated that Plaintiff continued to participate in appropriate treatment and hobbies such as fishing. In addition, Plaintiff had recently and consistently presented as cooperative, oriented in all relevant psychological fields, and in possession of intact memory functioning with a normal flow of speech. (Tr. 19, 286-304).

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan,* 936 F.2d 1215, 1218 (11th Cir.1991). Plaintiff has failed to carry

his burden in this case. Based on the foregoing, the ALJ properly assessed Plaintiff's severe impairments, and substantial evidence supports the ALJ's conclusion that Plaintiff failed to show that he met or medically equaled a listed impairment and the ALJ's RFC assessment.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 21, 2018.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties